**SABRINA P. SHROFF**
ATTORNEY AT LAW

80 BROAD STREET, 19TH FLOOR
NEW YORK, NEW YORK 10007
TELEPHONE: (646) 763-1490

August 17, 2022

**BY ECF**

The Honorable Ann M. Donnelly
United States District Court for
 the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*United States v. Parveg Ahmed*, 17 CR 378 (AMD)

Dear Judge Donnelly:

We write in response to the government's August 12, 2022 letter (Dkt. No. 49) and in further support of Mr. Parveg Ahmed's motion for release on bail pending sentence.[1]

In his August 11, 2022 Bond Motion (Dkt. No. 48), Mr. Ahmed detailed the strides he has made since his arrest in June 2017 and first bail application in May 2020. Among other things, he has sincerely rejected his prior radical beliefs and support for religiously motivated violence; tried to work with the government against extremism; and, since May 2021, attending weekly sessions with Dmitri Oster, a licensed social worker/therapist, which sessions focused on identifying and correcting the thought processes and factors that led Parveg to radicalize. *See, e.g.,* 6/24/22 Dmitri Oster Letter (attached as Ex. B to Mr. Ahmed's Bond Motion). Releasing Mr. Ahmed on bail will allow him to augment his positive progress and aid the Court in sentencing.

An essential component of Mr. Ahmed's release will be his supervision by the Court and enrollment in the Disruption and Early Engagement Program ("DEEP"), which program will supplement Mr. Ahmed's continued work with a DEEP-trained social worker. As set forth in the Declaration of Sabrina Shroff, Esq., filed contemporaneously with this letter, DEEP was created at the instigation of the United States Attorney's Office for the Eastern District of New York and provides law enforcement with specialized behavioral intervention that helps an individual disengage from extremist activity. (Shroff Decl. ¶ 3 and Ex. A).

Once accepted into DEEP, a participant is referred to a DEEP-trained therapist and an individual treatment plan is developed. Participation in the plan will last for as long as the person requires (the length of the engagement can be short or long and, of course, change over time) and

---

[1]     The proposed release conditions are substantial. They include a substantial bond to be signed and guaranteed by his father, mother, and older brother; electronically monitored home detention; no use of the Internet; and continued therapy, including participation in the DEEP program discussed below.

**SABRINA P. SHROFF, ESQ.**

Hon. Ann M. Donnelly
August 17, 2022
Page 2

the participant is then assigned to a transition specialist who will help the participant apply the skills, insight, and understanding gained during the treatment phase into the participant's regular life. *Id.* Mr. Oster's work with Mr. Ahmed has been extremely positive. Mr. Ahmed has made "productive usage of his counsel sessions" and has acted "to disassociate himself from all types of violent ideologically-driven and jihadi movements." (6/24/22 Dmitri Oster Letter (Ex. B to Bond Motion) at 1). Adding the intensive and particularized DEEP program plan to Mr. Ahmed's supervision by the Court will only accelerate and ensure Mr. Ahmed's continued growth.

The government's entire strategy is to focus exclusively on Mr. Ahmed's actions in 2017, while entirely ignoring the significant progress he has since made in abandoning extremism and addressing and correcting through therapy the faulty thought processes that led to his offense.[2]. The Court, however, should both credit and support Mr. Ahmed's progress.

Not only is rehabilitation an express sentencing factor under 18 U.S.C. § 3553(a), but the Court must consider the defendant as he or she stands before the Court in deciding issues of bail or sentence. *See United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002) ("a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing"); *DiAmbrosio v. Bagley*, 656 F.3d 379, 394 (6th Cir. 2011) (noting that lower court properly granted bail as "[t]he defendant stands before the court today") (Boggs, J., dissenting on other grounds). Rather than ignore the last five years, as the government implicitly urges the Court to do, "the district court [must] be able to consider the most recent evidence of a defendant's life and characteristics, which may be the most probative information available, when deciding whether a defendant should continue to be incarcerated or, in some cases, be immediately released." *United States v. Rose*, 379 F. Supp. 3d 223, 233-234 (S.D.N.Y. 2019), *aff'd*, 841 Fed. Appx. 328 (2d Cir. 2021); *see also Pepper v. United States*, 562 U.S. 476, 477 (2011) (recognizing that it is the "most up-to-date picture of [a defendant's] history and characteristics" that should be treated as fundamental).

Mr. Ahmed is simply not the same person he was five years ago, A world of difference exists between a 22-year-old (with an emerging adult brain) and a 27-year-old,[3] and Mr. Ahmed

---

[2]     The government accurately reports that the delay between Mr. Ahmed's guilty plea and sentencing is largely due to defense requests. (Dkt. No. 49 at 2). There is nothing nefarious or disingenuous in counsels' attempts to provide the Court with evidence of Mr. Ahmed's rejection of radicalism, or in seeking adjournments towards that goal. In fact, months ago, counsel asked the government to agree to a release plan similar to what we now seek from the Court, explicitly stating counsels' belief that release under strict conditions while sentence is still pending would allow Mr. Ahmed to exhibit his sincerity while protecting whatever interest the government has in a decades-long sentence. That the government believes that their rejection of our proposal should be the last word on the matter misunderstands its role.

[3]     Federal courts have long recognized that the "significant gaps" in maturity and pernicious vulnerability to peer influence that so affect the young are relevant to sentencing. *Miller v. Alabama*, 567 U.S. 460, 471 (2012); *Gall v. United States*, 552 U.S. 38 (2007) (holding that "it

**SABRINA P. SHROFF, ESQ.**

Hon. Ann M. Donnelly
August 17, 2022
Page 3

has met his burden of establishing that the person he is today is neither a danger to this community nor a flight risk. *See* Bond Motion (Dkt. No. 48); *United States v. Jones*, 2021 U.S. Dist. LEXIS 60632 (D. Conn 2021) (defendant's "efforts toward rehabilitation support the conclusion that he has a low risk of recidivism and therefore that his release does not pose a risk to public safety"). He should be granted bail so that he may participate in the DEEP program and the Court may consider his successful participation and completion in that program at sentencing.

Finally, we believe that oral argument would be helpful to the Court. In this regard, Mr. Richard Aborn, President of the Citizens Crime Commission of New York City and one of the key drivers of the DEEP program, has informed that he would be pleased to appear before the Court and detail how DEEP works and the specific plan for Mr. Ahmed. (Shroff Decl. ¶¶ 3-4, 13). Defense counsel would also make available, Dr. Katsavdakis, who conducted the initial evaluation and is willing to undertake another evaluation as Mr. Aborn would prefer.[4]

We thank the Court for its continued attention to this matter.

Respectfully submitted,

/s/

Michael K. Schneider
Sabrina P. Shroff
Counsel to Mr. Parveg Ahmed

SPS/MKS

---

was not unreasonable for the District Judge to view [21-year-old] Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future"); *Johnson v. Texas*, 509 U.S. 350, 367 (1993) (finding, in the case of a 19-year-old convicted of murder, that there "is no dispute that a defendant's youth is a relevant mitigating circumstance. ... Our cases recognize that 'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage'") (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982)).

[4]     Over the weekend, counsel reached out to Dr. Katsavdakis and has taken steps to ensure coordination between him and Mr. Aborn so that the update addresses the issues relevant to DEEP.