UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

———————————————————————————————x
                                                    :
UNITED STATES OF AMERICA                             :  17 CR 378 (AMD)
                                                    :
   v.                                                :
                                                    :  Attorney Declaration
PARVEG AHMED,                                        :
                                                    :
                Defendant.                           :
———————————————————————————————x

I, Sabrina Shroff, Esq., hereby declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.  Michael Schneider (of the Federal Defenders of New York) and I were appointed to represent Parveg Ahmed.

2.  I submit this declaration in support of his motion for release on bail pending sentence. All statements made herein are based on personal information and belief, unless otherwise indicated.

3.  In early 2016, Assistant United States Attorney for the Eastern District, Seth Ducharme (then Chief of the Violent Crime and Terrorism Section) started the Countering Violent Extremism working group). As part of that working group, the Eastern District reached out to the Citizen Crime Commission pf New York City to help design and deploy the Disruption and Early Engagement Program ("DEEP"). *See* Testimony of Richard Aborn, President of the Citizens Crime Commission to the House Appropriations Subcommittee on Homeland Security, "*Targeted Violence and Terrorism Prevention*" (March 24, 2021) (attached hereto as **Exhibit A**). *See also* https://www.justice.gov/opa/pr/justice-

department-invests-26-million-mitigate-violent-crime-and-support-public-safety;

https://www.cnn.com/2019/11/01/politics/counterterrorism-mass-shootings.

4. The Citizens Crime Commission of New York City ("CCC") is a non-partisan non-profit organization with multidisciplinary expertise that works to improve public safety through innovation. Mr. Aborn and the CCC advance strategies to improve the justice system, strengthen gun policies and practices, prevent youth gun violence, and prevent cybercrime. Information about the CCC, Mr. Aborn, is available at www. nycrimecommission.org/aborn.php, and is attached hereto as **Exhibit B** for the Court's convenience.

5. To create the DEEP program, the CCC engaged in in-depth research to understand both the progression to engaging in extremist violence and the most effective interventions for disengagement from violent extremism. Upon receiving a referral, DEEP makes a preliminary assessment and evaluation of the prospective participant. On acceptance, the participant is referred to a DEEP-trained therapist and an individual treatment plan is developed. Participation in the plan will last for as long as the person requires, a fact to be determined by the DEEP therapist.

6. The participant is then assigned to a transition specialist who will help the participant apply the skills, insight, and understanding gained during the treatment phase into the participant's regular life.

7. In early 2021, I reached out to Richard Aborn, President of the CCC and asked him to

consider Parveg Ahmed for participation in the DEEP program.[1] By then, I had worked with Mr. Ahmed, who, in turn, had been working with a social worker at the MDC.

8. I had also met with Mr. Ahmed's mother and father. I had, along with a interpreter who speaks Bangla, visited their home. I had met with one of Mr. Ahmed's younger siblings. We discussed the case, the government's position on the case, and the possibility of DEEP. I also discussed with the family their role in Mr. Ahmed's future including the need for support, supervision, and daily structure, including finding and maintaining a job.

9. Mr. Ahmed's parents and siblings are supportive and committed to doing the work that DEEP may direct. They have never missed a family visit at the MDC, are in daily contact with their son and are willing to engage with DEEP, should the program encourage their participation.

10. DEEP, still in its nascent phase, has outreached with federal and state prosecutors, defense lawyers, Office of Pretrial Services, Department of Probation and other entities so as to put in place a template that could be easily adapted for each new participant. Unfortunately, like many other programs, DEEP's progress has been stymied by the COVID-19 pandemic.

11. Through Mr. Aborn, and directly through counsel, we informed the United States Attorney's Office of Mr. Ahmed's interest in the DEEP program, and his desire to

---

[1] On page 2 of the 8/12/22 Letter to the Court, the government misidentifies Mr. Aborn as the "project manager" for DEEP. Mr. Aborn is president of the CCC.

participate in it.

12. For well over two years, I have spoken with Mr. Aborn about Parveg Ahmed. Mr. Aborn was made aware of Mr. Ahmed's family and educational background, and Mr. Ahmed's desire to participate in the program.

13. As a prerequisite to considering Mr. Ahmed for the DEEP program, Mr. Aborn required a risk assessment by a Neutral Evaluator, and an interview of Mr. Ahmed.

14. Dr. Kosta A. Katsavdakis, an evaluator used by the United States Attorney's Office, was used to evaluate Mr. Ahmed. Dr. Kostas's report was submitted as Exhibit C to Mr. Ahmed's August 11, 2022, bail application.

15. Mr. Ahmed was assigned a DEEP therapist with whom he worked for more than a year.[2] See, Exhibit B. to Bail Application.  Mr. Ahmed received therapy (via zoom), and at the end of each trimester, I would check in with Mr. Ahmed as to how therapy was proceeding.  Mr. Ahmed was engaged, responsive and worked hard to take advantage of the services provided to him.

16. For more than a year, I have been in monthly, if not more frequent, communication with Mr. Aborn. Among other things, we have discussed the work Ahmed has done while at the MDC which includes participation in weekly therapy, college classes, and other programs. We have received updates from DEEP about Mr. Ahmed's progress in therapy and the manner in which he has approached feedback given to him.

---

[2] Prior to the DEEP therapist, Mr. Ahmed worked with Rebecca Weiser a licensed social worker.

17. Throughout this time, defense counsel has sought to engage the Eastern District prosecutors in the process and support Mr. Ahmed's participation in DEEP.

18. The government's permission is not needed for Mr. Ahmed (or any other participant) to engage in DEEP. However, we thought their participation would be welcome and appropriate, especially since that office was instrumental in starting DEEP and Mr. Ahmed had taken steps (on his own initiative) and offered to cooperate with the United States.

19. Mr. Ahmed has been identified as a potentially appropriate participant in DEEP, the main impediment being his continued detention in the MDC. He is ready to work with DEEP, the Department of Probation and any other program identified for him.

20. To the extent there is any discrepancy or dispute regarding DEEP or Mr. Ahmed's participation in it upon his release, Mr. Aborn can be reached at ███████ .

21. Mr. Ahmed is willing to meet with the United States and subject himself to whatever testing, re-testing or evaluation they wish so that he may demonstrate to them and to this court the complete turnaround he has had – in his thinking and his view of his own future.

22. I declare under penalty of perjury that the foregoing is true and correct.

Executed: August 17, 2022

_____/s/_____ .
Sabrina P. Shroff